UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK BARTLETT,

        Plaintiff,

      v.

JAMES BARTLETT, DENISE BARTLETT,
EVAN BARTLETT, ANOOSH MOTAMEDI,
and MARK KEENAN,

        Defendants.

No. 16 CV 6595

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Mark Bartlett alleges that his brother James Bartlett—along with James's wife, son, and two employees—participated in a racketeering scheme to set up cash-lending stores that siphoned business and resources away from the brothers' co-owned cash-lending stores. Defendants move to dismiss the complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case under 28 U.S.C. § 1406, to dismiss the complaint for failure to state a claim under Rule 12(b)(6), and to stay the case under the *Colorado River* abstention doctrine. For the following reasons, the motions are granted in part. This case is transferred to the Southern District of Illinois.

## I.    Venue

### A.    Legal Standards

When considering a motion to dismiss, a district court ordinarily assumes the truth of all well-pleaded allegations in the plaintiff's complaint. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808 (7th Cir. 2016). But in considering a motion to dismiss for

improper venue under Rule 12(b)(3), the district court assumes the truth of the allegations in the plaintiff's complaint unless contradicted—at that point, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate. *Id.* at 809. Once the defendant has submitted affidavits or other evidence in opposition, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Res. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue. *See Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

## B.   Background

Mark Bartlett's complaint alleges that he and his brother James Bartlett jointly own American Cash Loans, LLC, and B & B Investment Group, Inc. As relevant here, James manages four cash-lending stores in New Mexico. (American Cash Loans owns three stores, and B & B Investment owns one.) Mark alleges that in 2014, James—along with James's wife Denise, son Evan, and employees Anoosh Motamedi and Mark Keenan—set up rival cash-lending stores in New Mexico and siphoned business and resources away from the brothers' co-owned stores. Mark brings claims against all defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1962(c).

This is not the first lawsuit to arise out of the brothers' joint business ownership. In early 2015, Mark brought suit against James in Florida state court, alleging that James breached the brothers' business agreement and his fiduciary

2

duties by failing to transfer funds from the cash-lending stores to Mark. *See* [8-1].[1] Several months later, Mark asserted similar claims against James in New Mexico state court (in two consolidated cases). *See* [12-5]; [12-6]; [12-7]; [14-5]; [23-1]. The Florida court stayed proceedings pending completion of the New Mexico litigation and then dismissed the case without prejudice. [12-8]; [14] at 2. The New Mexico litigation remains pending. Mark brought this suit in federal court in June 2016. [1].

Mark's complaint alleges that venue is proper in the Northern District of Illinois under 18 U.S.C. § 1965 "because Jim owns Loan Stores and an internet lending company in this district, lends to customers who reside in this district, and has employees in this district." [1] ¶ 9. The complaint is silent on the propriety of venue as to the remaining defendants, but in the jurisdictional section, it alleges that Evan, Motamedi, and Keenan reside in Illinois and that Mark, James, and Denise reside in Florida. According to the complaint, James and Denise maintain a home in Illinois and James also maintains business headquarters in Illinois. [1] ¶¶ 11–16.

The defendants submitted affidavits in support of their motion to dismiss for improper venue. According to these affidavits, Keenan and Motamedi reside in Edwardsville, Illinois (approximately 30 miles from St. Louis, Missouri) and, since 2014, each has worked out of offices located approximately 30 miles from St. Louis.

---

[1] Bracketed numbers refer to entries on the district court docket.

[12-2]; [12-3].[2] They have no agents or employees in the Northern District of Illinois. James, Denise, and Evan Bartlett reside in Florida, although James and Denise also have a home in Edwardsville, Illinois. [12-1]; [25-1]; [25-2]. Evan works both in Florida and in Illinois (approximately 30 miles from St. Louis), and when in Illinois, he stays at his parents' home. [25-2]. James acknowledges his joint ownership of American Cash Loans and B & B Investment Group, but states that his other businesses (named AAA Community Finance I and II, and which are unrelated to the current lawsuit) permanently closed their offices in upstate Illinois in July and August 2016 and that, since August 2016, he has no agents or employees north of Bethalto, Illinois (approximately 30 miles outside of St. Louis). [25-1].

In response to the motions to dismiss, Mark submitted B & B Investment Group's corporate filings with the state of Illinois, which state that its place of business is in Elgin, Illinois, and that it had a registered agent in Elgin, Illinois. [20-1]; [20-2]. Mark also submitted a website printout for AAA Community Finance, which indicates that it has a branch near Rockford, Illinois. [20-3].

## C.    Analysis

Defendants move to dismiss Mark's complaint under Rule 12(b)(3), arguing that venue is improper under either the general venue statute for federal question cases, 28 U.S.C. § 1391, or the under RICO's venue provisions, 18 U.S.C. § 1965. In the alternative to dismissal of the complaint, defendants seek a transfer (under 28

---

[2] Keenan's affidavit also states that he is currently employed by Rent-A-Center, whose main office located in Plano, Texas.

U.S.C. § 1406(a)) to the Southern District of Illinois, where defendants concede that venue is proper. *See* [12] at 1, 7, 15; [25] at 1, 8. In response, Mark argues that James waived venue by moving to disqualify Mark's counsel before moving to dismiss based on improper venue. Mark maintains that venue is proper under § 1391 because his RICO claim alleges damage to his proprietary interest in an Illinois corporation (B & B Investment Group) and under § 1965(a) because James has agents and transacts affairs in this district. Mark argues that under § 1965(b), the "ends of justice" permits the remaining defendants to be brought into this venue.

### 1. *Waiver*

James did not waive his objection to venue by filing his motion to disqualify Mark's counsel prior to filing his motion to dismiss for improper venue. The motion to dismiss for improper venue was filed with James's Rule 12(b)(6) motion to dismiss, making it timely under Rule 12(h)(1). James's objection to venue was filed even before the parties finished briefing the motion to disqualify. [8]; [12]. Rule 12 requires that "improper venue must be pleaded early" with or before other Rule 12 motions, "but not at the earliest possible opportunity." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004). Filing the motion to disqualify Mark's counsel before Rule 12 motions avoided potential prejudice to either Mark or James (depending on the outcome of the motion), and avoided waiver of a former-client conflict of interest. *See, e.g., Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988). Mark was not inconvenienced or prejudiced from the

order of James's motions, and James's objection to venue was not improperly delayed.

### 2.   *Venue under § 1391*

Mark argues that venue is proper under § 1391(b)(2), which makes venue proper in the district where "a substantial part of property that is the subject of the action is situated." Because a shareholder's interest in a corporation is deemed to be personal property, and because B & B Investment Group has an office and agent in this district, Mark maintains that the alleged RICO conspiracy damaged his shareholder's interest in B & B Investment Group and therefore makes venue proper in this district. In support, Mark cites to *Dixon v. Joeleon Holdings, LLP*, which involved allegations that the defendants breached an LLC membership agreement and their fiduciary duties by allegedly usurping the plaintiff's member's interest in the LLC and his role as managing member. No. 12 C 2449, 2012 WL 1598055, at *2–3 (N.D. Ill. May 4, 2012). Because membership interest in an Illinois LLC was a form of personal property located in Illinois and created by Illinois statute, the court found venue appropriate under § 1391(b)(2) because a "substantial part of property" that was subject of the action was in Illinois. *Id.* at *3. This, however, was in addition to finding that a venue was appropriate under § 1391(b)(2) because a "substantial part of the events" occurred in Illinois—the claims involved the execution in Illinois of a contract creating an Illinois LLC and breach of that contract, allegedly giving defendants control of an Illinois company. *Id.* at *2.

Unlike in *Dixon*, where the membership interest in the LLC was allegedly usurped by the defendants, here Mark does not argue that the defendants stole his 50% ownership of B & B Investment Group, only that their actions decreased its value. Essentially, Mark argues that the alleged economic harm to B & B Investment Group (an Illinois company owning one of the four stores in New Mexico at issue) is sufficient for proper venue under § 1391(b)(2). Although the Seventh Circuit has not yet ruled on this issue, courts in this district generally hold that the locus of a plaintiff's economic harm is an insufficient basis for venue under § 1391(b)(2). *See Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F.Supp.3d 870, 879 (N.D. Ill. 2015) (collecting cases); *see also* 14D Wright & Miller Fed. Prac. & Proc. Juris. § 3806 (4th ed. 2016) ("There is a tendency to conclude that suffering economic harm within a district is not by itself sufficient to warrant transactional venue there. This is probably the correct view."). This approach makes sense because venue is a defense "strictly for the convenience of the defendant," *American Patriot*, 364 F.3d at 887, and allowing plaintiff's economic harm to provide the sole basis for venue would defeat that purpose. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84 (1979) (statutory venue provisions were designed "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial."). Venue is not proper under § 1391.

### 3. *Venue under § 1965*

Mark also asserts that venue is proper under § 1965(a) as to James because he has an agent and transacts business in this district, and that where venue is proper as to one RICO defendant, § 1965(b) makes venue proper as to the remaining

7

RICO defendants. Section 1965(a) provides that a RICO action may be brought against a person in any district in which "such person resides, is found, has an agent, or transacts his affairs." Section 1965(b) provides that in any RICO action "in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." Although "[s]ection 1965(a) deals with venue in RICO cases," and "§ 1965(b) creates personal jurisdiction by authorizing service," *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987), courts understand § 1965(b) to allow out-of-district defendants to be haled into a venue that is proper to at least one defendant, if doing so is in the "ends of justice." *See, e.g., id.* at 672.

James does not reside in this district nor can he be found here. He has ownership interests in corporations located here, but Mark identifies no agent of James's in the Northern District of Illinois. Instead, Mark argues that it would be unfair to permit James to use the corporate form to separate him from the agents who work for the companies. The fiduciary shield doctrine—a flexible doctrine rooted in equity—is relevant to personal jurisdiction under Illinois law, *see Rollins v. Ellwood*, 141 Ill.2d 244, 270 (1990), but does not inform the principal-agent relationship that matters for federal venue.[3] It is Mark's burden to establish venue,

---

[3] The fact that a court may have personal jurisdiction over a defendant does not mean that venue is proper in that court. *See* 14D Wright & Miller Fed. Prac. & Proc. Juris. § 3801 (4th ed. 2016).

and he has made no showing that any agent or employee of a company owned by James in this district has the authority or ability bind James personally—the hallmark of a principal-agent relationship. *See* Restatement (Second) of Agency § 8A cmt. a (1958) ("The power of an agent to bind his principal is the distinctive feature of the Anglo-American agency relation."); Restatement (Third) of Agency § 1.01 (2006) (agent acts on principal's behalf). James can direct his companies' employees, but there is no indication that their actions are for James's benefit. The companies apparently transact *their* business in this district, but Mark has not shown that James transacts *his* affairs here. Section 1965(a) does not support venue for the RICO action against James, and no other defendant falls within that section's scope.

But even if venue were proper as to James, the "ends of justice" do not require haling all the RICO defendants into this district. Mark does not dispute that absent § 1965(b), the other defendants could not be summoned here, but argues that if venue is appropriate for one RICO defendant, all defendants belong in the action. *See VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F.Supp. 1167, 1173 (N.D. Ill. 1989). The RICO venue provisions were designed to be expansive "so that at least one court will have jurisdiction over everyone connected with any RICO enterprise." *Lisak*, 834 F.2d at 672. But the "ends of justice" limitation has meaning, and is informed by the purpose of statutory venue provisions, which is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy*, 443 U.S. at 183–84. For this reason, "the first

9

preference, as set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *see Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006); *Lisak*, 834 F.2d at 672 (suggesting that the "ends of justice" did not "require" haling nonresident defendant into a district court in Illinois when a district court in Indiana had jurisdiction over all defendants connected with the alleged RICO enterprise); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). A strict interpretation of the "ends of justice" could cause some RICO violations to go unpunished if a plaintiff is unable to finance long-distance litigation against defendants causing harm in a distant state. *See Cory*, 468 F.3d at 1232 (noting that the "ends of justice" is a "flexible concept uniquely tailored to the facts of each case"). That concern, however, is not present here because Mark is a Florida resident who has instigated litigation against defendants in both Illinois and New Mexico.

Mark does not dispute defendants' assertion that venue in the Southern District of Illinois is proper for all defendants. Because another venue appropriate to all defendants exists in the Southern District of Illinois, the "ends of justice" do not require that Denise, Evan, Motamedi, and Keenan be haled into this district— where no alleged conduct occurred and no party resides. *See, e.g., Lisak*, 834 F.2d at 672.

4.  *Transfer*

The parties do not dispute that the Southern District of Illinois is a proper venue for this case. Dismissal of an action that may be brought elsewhere is time consuming and may be justice-defeating, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962), and (as Mark argues in opposition to defendants' motions, [20] at 8) the interests of efficiency, judicial economy, and fairness to the litigants weigh in support of adjudicating this RICO action in a single venue. Therefore, I find that it is in the "interest of justice" under 28 U.S.C. § 1406 to transfer this case to the Southern District of Illinois.

Because this case is being transferred to another court, I decline to rule on defendants' Rule 12(b)(6) motions to dismiss and defendants' motion to stay under the *Colorado River* abstention doctrine.

## II.  Conclusion

Defendants' motions to dismiss, or in the alternative, to transfer, [12], [25], are granted in part. The Clerk is directed to transfer this case to the United States District Court for the Southern District of Illinois.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 1/11/2017