UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK BARTLETT,

    Plaintiff,

v.

JAMES BARTLETT, DENISE BARTLETT, EVAN BARTLETT, ANOOSH MOTAMEDI, and MARK KEENAN,

    Defendants.

Case No. 3:17-cv-00037-JPG-SCW

## MEMORANDUM & ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

This matter comes before the Court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 61.) The plaintiff has filed a timely response to the motion. (Doc. 65.) For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss.

### I. BACKGROUND

    *i.    The Scheme*

The factual and procedural saga of this case is dense and, at times, caustic. Mark and James ("Jim") Bartlett are brothers. They jointly own nine cash-lending stores via four business entities. These businesses are spread throughout New Mexico, Florida, Illinois, and Wisconsin. Mark manages five of these stores while Jim operates four. The brothers own via two entities the four stores that Jim operates: American Cash Loans, LLC ("American") and B&B investment Group, Inc. ("B&B"). B&B does business as Cash Loans Now ("Cash Loans"). Mark claims that the two had an agreement to split profits from all nine stores 50/50, with Mark receiving an extra bonus each year for managing one more store than Jim. (Compl. ¶¶ 17–34.)

1

According to the complaint, this arrangement continued until 2014—when Jim allegedly devised a complex scheme to cut Mark out of all of the profits from American and Cash Loans. Mark claims that in August 2014, Jim directed his wife, Denise, and his "second-in-command", Anoosh Motamedi, to resurrect from its tomb Dellano, LLC—a dissolved business corporation—with the "illicit purpose of defrauding Mark". (Compl. ¶¶ 37–42.) This fraud supposedly occurred through a hide-the-shell game that diverted resources from American and Cash Loans into a new set of cash-lending stores called "Quick Cash". (Compl. ¶ 46.)

The alleged organizational scheme in the complaint is complex. Dellano, LLC is the lynchpin: it does business as Quick Cash. The two registered owners of Dellano are The Pathway Group, Inc. (with a 75% ownership share) and Blue Financial, Inc. (with a 25% ownership share): two organizations that the defendants minted in September 2014, shortly after they reanimated Dellano. The shareholders, officers, and directors of Pathway are Evan Bartlett—Jim's son—and Denise. Evan allegedly remits a substantial amount of the profits he receives from the organization back to his parents. The shareholders, officers, and directors of Blue Financial are Denise and Motamedi. The top level of the scheme is Renwel Financial, Inc., of which Denise is the shareholder, officer and director. Mark alleges that Jim and Denise directly invested $155,000 in Renwel, which Renwel then loaned to Pathway and Blue Financial. Pathway and Blue Financial then invested that money in Dellano, which Dellano used to fund the Quick Cash stores. (Compl. ¶¶ 38–67.)

Mark alleges that Jim is the "king pin" of this scheme to defraud. (Compl. ¶ 152.) Specifically, Mark claims that Jim set up this scheme to cloak his involvement in Quick Cash, which is critical to the theory of Mark's case: Mark alleges that Jim has illegally funneled customer lists and information, financial data, borrowing and lending protocols, form loan

applications, TILA disclosure forms, and ACH authorization forms from American and Cash Loans into the new Quick Cash stores. (Compl. ¶¶ 86–97.)

Mark has now brought a Racketeer Influenced and Corrupt Organizations Act (RICO) action against Jim, Denise, Evan, Motamedi, and a fifth defendant—Mark Keenan—who allegedly works as an employee for American, Cash Loans, and Quick Cash. Mark claims that the predicate acts giving rise to a valid RICO claim are (1) the previously mentioned theft of trade secrets in violation of 18 U.S.C. § 1832, and (2) mail and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343. Mark believes the wire fraud occurred when (1) the defendants used interstate wires to incorporate Blue Financial, Pathway, and Renwel, and (2) when Jim and Denise wired the $155,000 loan through Renwel to Blue Financial and Pathway. It is not clear from the complaint when any alleged mail fraud occurred.

### ii. Procedural History

A similar story has been told in court before. In 2015, Mark filed suit against James in Florida state court alleging breach of contract and breach of fiduciary duty arising from the same set of facts as this case. The Florida court stayed the proceedings, however, when it discovered that the two brothers had filed parallel claims against each other in New Mexico state court. In the New Mexico litigation, Mark had asserted a state law civil RICO counterclaim against James in addition to claims of breach of contract, breach of fiduciary duty, interference with contract, and interference with prospective contracts. Mark voluntarily dismissed the RICO claim, however, several days after he filed this federal RICO action in the United States District Court for the Northern District of Illinois.

The Northern District of Illinois transferred the case to this Court pursuant to 28 U.S.C. § 1406. (Docs. 30, 31.) Following the transfer, the New Mexico state court held a trial and

dismissed all of Mark's claims with prejudice. Although this case may be a candidate for res judicata in the future, that analysis is not ripe until the judgment on the pleadings stage. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (stating that res judicata is an affirmative defense and therefore not appropriate until the judgment on the pleadings stage under Federal Rule of Civil Procedure 12(c)). At this early juncture, the defendants have instead moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(6)

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint: (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. The Racketeer Influenced and Corrupt Organizations Act

The Racketeer Influenced and Corrupt Organizations Act allows for a civil cause of action by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . ." 18 U.S.C. § 1964(c). Under section 1962, it is unlawful to participate in the "conduct of [an] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt" 18 U.S.C. § 1962(c). A violation requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The conspiracy provision—subsection (d)—further requires "that (1) the defendant[s] agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant[s] further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823 (7th Cir. 2016) (internal citation omitted). In order to state a valid RICO claim, a plaintiff must plead that he suffered "an injury to [his] business or property [that] result[ed] from the underlying acts of racketeering." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 728–29 (7th Cir. 2014) (citing *Haroco, Inc. v. Amer. Nat'l B & T Co. of Chi.*, 747 F.2d 384, 398 (7th Cir. 1984)).

#### i. *Pattern of Racketeering Activity*

The first two elements of a RICO violation—"conduct" and "enterprise"—are generally simple to allege. Elements three and four, however—"through a pattern" "of racketeering activity"—is where the statute transforms into a complex Medusa-like creature with multiple moving parts. First, a plaintiff must show a set of predicate acts: the "racketeering activities". The statute gives a laundry list of crimes and acts that qualify as racketeering activities, including

5

theft of trade secrets and wire fraud. 18 U.S.C. § 1961(1). A plaintiff must show at least two of these activities occurred in order to state a valid RICO claim. 18 U.S.C. § 1961(5).

Next, the predicate acts must exhibit some sort of pattern: a "continuity plus relationship". *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The relationship prong is simple: the acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (internal citation omitted). Continuity is where things become tricky. It exists to ensure that RICO "targets long-term criminal conduct", considering Congress created the statute with the goal of "eradicating organized, long-term, habitual criminal activity"—not simple business disputes. *Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)).

There are two types of continuity: open-ended and closed-ended. Closed-ended continuity exists when the alleged scheme had a distinct ending point. *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). To determine whether a closed-ended scheme existed, the Seventh Circuit analyzes "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). Open-ended schemes are more abstract: a plaintiff must show past conduct that "by its nature projects into the future with a threat of repetition". *H.J. Inc.*, 492 U.S. at 241. In this circuit, three circumstances qualify for open-ended continuity: "when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal

6

purposes." *Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 780 (7th Cir. 1994)).

## III. ANALYSIS

Despite referring to the defendants as "co-conspirators", the complaint alleges that each of the five defendants violated 18 U.S.C. § 1962(c): the substantive RICO provision. The following table lays out the posture of each defendant and the specific predicate acts that the complaint alleges against them:

| **Defendant** | **Alleged Predicate Acts** |
| --- | --- |
| **\*James "Jim" Bartlett**<br>The alleged "the king pin" | 18 U.S.C. § 1343. Wire fraud (Compl. ¶ 154)<br>18 U.S.C. § 1341. Mail fraud (Compl. ¶ 154)<br>18 U.S.C. § 1832. Theft of trade secrets (Compl. ¶ 154) |
| **Denise Bartlett**<br>Jim's wife | 18 U.S.C. § 1343. Wire fraud (Compl. ¶ 159)<br>18 U.S.C. § 1341. Mail fraud (Compl. ¶ 159) |
| **Evan Bartlett**<br>Jim's son | 18 U.S.C. § 1343. Wire fraud (Compl. ¶ 164)<br>18 U.S.C. § 1341. Mail fraud (Compl. ¶ 164) |
| **\*Anoosh Motamedi**<br>Jim's "second-in-command" | 18 U.S.C. § 1343. Wire fraud (Compl. ¶ 169)<br>18 U.S.C. § 1341. Mail fraud (Compl. ¶ 169)<br>18 U.S.C. § 1832. Theft of trade secrets (Compl. ¶ 169) |
| **Mark Keenan**<br>Jim's employee | 18 U.S.C. § 1832. Theft of trade secrets (Compl. ¶ 169) |

\* James Bartlett and Anoosh Motamedi were the defendants in the New Mexico litigation. That court dismissed Mark's claims with prejudice.

The defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. First, the defendants assert that Mark has not properly alleged a "pattern of racketeering activity": each defendant must have committed at least two predicate acts and the acts must satisfy the continuity requirement. Second, they argue that courts in the Seventh Circuit have routinely dismissed cases like this one for failure to state a claim. Third, the defendants argue that the predicate acts were not a proximate cause of Mark's injury.

7

A. Predicate Acts

The RICO statute states that mail fraud, wire fraud, and theft of trade secrets all qualify as predicate offenses. 18 U.S.C. § 1961(1). In order to survive a motion to dismiss, the complaint must state a plausible claim that the defendants engaged in these predicate acts. *Bell Atl.*, 550 U.S. at 555. The Court will address each of these predicate acts in turn.

    *i.*     *Wire & Mail Fraud*

The plaintiff alleges that the defendants engaged in wire fraud when (1) Jim, Denise, Evan, and Motamedi used interstate wires to incorporate Blue Financial, Pathway, and Renwel, and (2) when Jim and Denise wired the $155,000 loan through Renwel to Blue Financial and Pathway. 18 U.S.C. § 1343 makes it unlawful for a person to transmit by means of wire any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud. An individual violates the statute if three elements are met: (1) participation in a scheme to defraud; (2) intent to defraud; and (3) the defendant causes a wire transmission in furtherance of the fraudulent scheme. *United States v. Ratliff-White*, 493 F.3d 812, 817 (7th Cir. 2007). A defendant can "cause" a wire transmission as long as they act "with the knowledge that use of the wires will occur in the ordinary course of business or where use of the wires can be reasonably foreseen." *Id.* (citing *Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999). The elements of mail fraud directly parallel those of wire fraud, with mail fraud requiring the use of mail rather than a wire transmission. *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006).

Courts in this circuit have been hesitant to allow RICO claims predicated on wire and/or mail fraud alone to proceed. *See McDonald v. Schencker,* 18 F.3d 491, 499 (7th Cir. 1994) (referring to a RICO claim predicated on mail fraud as "nothing more than a garden-variety

business dispute recast as mail fraud"); *Cmty. Ins. Servs., Ltd. v. United Life Ins. Co.*, No. 05-CV-4105-JPG, 2006 WL 2038652, at *5 (S.D. Ill. Mar. 24, 2006) (dismissing a RICO action predicated on wire and mail fraud as a "garden-variety fraud case concerning what is best described as a business dispute"); *Faith Constr. 4, Inc. v. Girouard,* No. 14 CV 2886, 2014 WL 6679118, at *3 (N.D. Ill. Nov. 21, 2014) (dismissing a RICO action that was predicated on mail fraud because the act of mailing was too remote to be the proximate cause of a RICO injury); *Wankel v. S. Illinois Bancorp, Inc.,* No. 06-cv-0619-MJR, 2007 WL 2410328, at *10 (S.D. Ill. Aug. 21, 2007) ("it seems that Plaintiffs' cause of action constitutes precisely what the Supreme Court and Seventh Circuit courts hope to forestall: 'RICO's use against isolated or sporadic criminal activity [such that] RICO [becomes] a surrogate for garden-variety fraud actions properly brought under state law'").

The defendants have cited all of the above cases in their motion to dismiss. The plaintiff has responded in an interesting manner: they do not dispute the cited cases, but rather claim that "Defendants mischaracterize Mark's RICO claim"; "Mark clearly bases his RICO claim on Defendants' theft of trade secrets"; and "Mark's RICO claim is different from the cases Defendants cite because it is based on theft of trade secrets, a serious federal offense". (Pl.'s Resp. to Def.'s Mot. to Dismiss 5–6.) What the plaintiff appears to have forgotten is that the complaint alleges that two of the defendants—Denise and Evan Bartlett—only committed the predicate acts of mail and wire fraud. As courts in this circuit have repeatedly explained, a federal RICO claim is not the appropriate mechanism to deal with garden-variety fraud disputes. Accordingly, the counts against Denise and Evan Bartlett must be dismissed.

    *ii.*    ***Theft of Trade Secrets***

The plaintiff alleges that three of the defendants—Jim Bartlett, Anoosh Motamedi, and Mark Keenan—engaged in illegal theft of trade secrets by funneling resources away from American and Cash Loans and into the new Quick Cash stores. These resources included customer lists and information, financial data, borrowing and lending protocols, form loan applications, TILA disclosure forms, and ACH authorization forms. (Compl. ¶¶ 86–97.) A theft of trade secrets claim pursuant to 18 U.S.C. § 1832 has six elements: (1) the information at issue is a trade secret; (2) the defendants knowingly possessed the trade secrets; (3) the defendants knew the trade secrets were stolen or appropriated, obtained, or converted without authorization; (4) the defendants intended to convert the trade secrets to the economic benefit of anyone other than its owner; (5) the defendants knew the offense would injure the owner; and (6) the trade secrets were related to a product placed in interstate or foreign commerce. *See United States v. Hanjuan Jin,* 833 F. Supp. 2d 977, 1005 (N.D. Ill. 2012) (summarizing the elements of 18 U.S.C. § 1832).

At this stage in the proceedings, the plaintiff has adequately pled that the defendants engaged in theft of trade secrets. The Economic Espionage Act defines "trade secrets" as:

> "[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information ... whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]"

18 U.S.C. § 1839(3). While not all of the resources that the plaintiff alleges the defendants stole may qualify as trade secrets, there are at least two that do: customer lists and financial data.

These fall under the plain language of the statute: "all forms and types of financial [and] business information".

Moreover, plaintiff has alleged enough facts at this stage to satisfy the remaining elements of the statute. The complaint states that "[a]ll reasonable and necessary steps were taken to protect American and B&B customer lists and other trade secret information from improper disclosure" and "the customer lists were kept on secure computer networks, shielded from the general public, and only provided to employees on a need to know basis." (Compl. ¶¶ 93–94.) The complaint also repeatedly asserts that the defendants intended to convert the trade secrets for their own personal gain and to the detriment of Mark. (Compl. ¶¶ 85–134.) This is enough to satisfy the *Twombly* pleading standards.

### B. Continuity

The plaintiff must also meet the continuity requirement in order to state a valid "pattern of racketeering activity" under RICO. The defendants argue that this case is similar to two cases in this circuit in which the plaintiff failed to allege the continuity requirement. First, in *Star Forge Mfg., Inc. v. F.C. Mason, Inc.*, 2002 WL 31248559 (N.D. Ill. Oct. 4, 2002), the court found that the plaintiff failed to properly show closed-ended continuity as a matter of law because there was "one and only one scheme—the diversion of customers and business . . . with one victim . . . and one injury (the loss of business)." Second, in *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), the Seventh Circuit held that an alleged RICO scheme predicated on fraud was a "closed-ended scheme [that] has none of the trappings of a long-term criminal operation that carries with it a threat to society; it is, in short, a run-of-the mill fraud case that belongs in state court".

The plaintiff counters, however, by claiming that he has pled an open-ended scheme predicated on theft of trade secrets—distinguishing his action from *Star Forge* and *Midwest Grinding*. Specifically, plaintiff argues that the defendants plan to (1) "continue plundering the lending stores" (Compl. ¶ 7); (2) move and consolidate the American and B&B stores into one small location dedicated solely to collecting outstanding loans (Compl. ¶ 106); and (3) fill the vacancies with Quick Cash stores (Compl. ¶ 109). At the motion to dismiss stage, the Court must take these allegations as true. *Bell Atl. Corp.,* 550 U.S. at 555. And if the allegations are true, plaintiff has alleged past conduct that "by its nature projects into the future with a [specific] threat of repetition" that satisfies the *Twombly* pleading standards. *H.J. Inc.*, 492 U.S. at 241.

### C. Proximate Cause

There is one final matter to address. The defendants' last argument is that the case should be dismissed because the predicate acts of wire and mail fraud did not proximately cause the plaintiff's injury. This argument has already been interwoven in the wire and mail fraud analysis, but the Court wants to make clear that the proximate cause argument fails in respect to the theft of trade secrets claims. In order for a RICO violation to proximately cause an injury, the plaintiff must show that "the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Here, if the theft of trade secrets allegations are true, the diversion of financial and business data from American and B&B to Quick Cash would directly harm Mark's financial interests in his holdings. Accordingly, the proximate cause standard has been met.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss. (Doc. 61.) The Court **DISMISSES without prejudice** the counts

against Denise Bartlett (II) and Evan Bartlett (III) for failure to state a claim. The Clerk of Court is **DIRECTED** to terminate Denise and Evan Bartlett as defendants in this matter.

**IT IS SO ORDERED.**
**DATED: November 15, 2017**

> <u>s/ *J. Phil Gilbert*</u>
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**