# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK BARTLETT,

    Plaintiff,

v.

JAMES BARTLETT, ANOOSH MOTAMEDI, and MARK KEENAN,

    Defendants.

Case No. 3:17-cv-00037-JPG-SCW

## MEMORANDUM & ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

    The Racketeer Influenced and Corrupt Organizations Act makes it unlawful to participate in the "conduct of [an] enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). The plaintiff in this case alleges that his brother and a few co-conspirators violated the Act by funneling resources away from the brothers' joint cash-lending business. This matter now comes before the Court on the defendants' motion for judgment on the pleadings, which argues that res judicata bars the complaint because the plaintiff already litigated this dispute in New Mexico before splitting off his RICO claim and re-filing it here. (Doc. 71.) Unfortunately for the plaintiff, "[t]hat is called 'claim splitting,' and is barred by the doctrine of res judicata." *Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010). For the following reasons, the Court **GRANTS** the defendants' motion.

**I.    BACKGROUND**

    Plaintiff Mark and defendant James ("Jim") Bartlett are brothers. (Compl. ¶ 1, Doc. 1.) As described more extensively in this Court's order resolving the motion to dismiss, the two jointly own nine cash lending stores. (*See generally* Doc. 66.) Mark manages five of them and Jim manages four, with the two splitting the profits about 50/50. The central theme of this case is

1

Mark's allegation that Jim funneled resources away from Jim's four stores into a new cash-lending business. (Compl. ¶¶ 37–42, Doc. 1.) That way, Jim would no longer have to split any profits with his brother. The scheme involved a number of corporations owned by Jim, his wife, his son, and his business partner—Anoosh Motamedi. (Compl. ¶¶ 38–67, Doc. 1.) The last defendant is Mark Keenan, an employee of Jim's that apparently helped divert a number of resources between the businesses. Mark brought his RICO claim against all five of these individuals, but the Court dismissed Jim's wife and son after the complaint failed to state a claim against them. The Court allowed the RICO claims against Jim, Motamedi, and Keenan to proceed under a theft of trade secrets theory.

This is not the first time, however, that Mark has told this tale. He has brought this same series of facts before state courts in Florida and New Mexico. (Mot. for J. on the Pleadings 1, Doc. 71.; Answer Ex. A, Doc. 70-1.) Jim also brought an action in New Mexico, and the New Mexico courts consolidated the two cases into one. (Answer Ex. B, Doc. 70-2.) Mark agreed to stay the Florida suit until the parties resolved the New Mexico dispute, which involved the two brothers, Motamedi, and Dellano, LLC: the corporation that owned Jim's new cash-lending business.

The claims and counterclaims in the New Mexico case were numerous, including breach of contract, breach of fiduciary duties, tortious interference with business expectancy, civil conspiracy, and even a claim for injunctive relief to remove Jim as a managing member of the stores. (*Id.*) But one of these claims stands out above the rest: Mark's counterclaim under the New Mexico Racketeering Act (N.M.S.A. § 30-42-1). (*Id.* at ¶¶ 51–62.) Curiously, that New Mexico RICO claim was still pending when Mark filed the instant federal RICO claim in Illinois.

A few days later, he voluntarily dismissed the New Mexico racketeering claim, effectively splitting his case between two jurisdictions.

The New Mexico case did not end well for Mark Bartlett. First, the court dismissed with prejudice the claims against Jim. (Answer Ex. C, Doc. 70-3.) Next, after a bench trial, the court found that there was no good faith basis for Mark to have sued Motamedi or Dellano, LLC at all. (Answer Ex. D, Doc. 70-4.) The New Mexico court entered a scathing final judgment on the matter, followed by sanctions against Mark due to his willful bad-faith conduct during the case. (*Id.*; Answer Ex. F, Doc. 70-6.) In the final judgment order, the court found that "Mark threatened Mark Keenan and Jim that they were going to jail, that [Jim's wife and son] were going to jail, and that Mark had more money than they did and he will keep coming after them until they are broke" (*Id.* at ¶ 81); "Mark called himself 'ruthless' when engaged in litigation and stated that he would pursue this litigation 'all the way at any cost'" (*Id.* at ¶ 92); "Mark joined Motamedi and [the corporation] in this litigation without probable cause" (*Id.* at ¶ 91); "Motamedi had to take a second mortgage on his home and liquidate his savings to pay for this litigation" (*Id.* at ¶ 91); "Mark has used his superior economic position to harm Motamedi and Dellano by suing them in New Mexico and in Illinois" (*Id.* at ¶ 95); "Mark engaged in wrongful acts were malicious, reckless, willful, wanton and/or in bad faith" (*Id.* at ¶ 98); and more.

Even though the New Mexico court's final judgment should have ended this dispute, Mark Bartlett's federal RICO claim here has continued to truck along. Now, that truck has hit a major roadblock, as the defendants have moved the Court to enter a judgment on the pleadings on the basis of res judicata.

## II. LEGAL STANDARDS

### i. *Judgment on the Pleadings*

3

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards as a Rule 12(b)(6) motion to dismiss: the pleadings must plausibly suggest that the plaintiff has a right to relief above a speculative level. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When ruling on this type of motion, the Court considers the complaint, answer, and any written instruments attached to those pleadings; accepts all well-pleaded allegations in the complaint as true; and draws all inferences in favor of the plaintiff. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    ii.    **Res Judicata**

Res judicata, also known as claim preclusion, prevents parties from repeatedly suing each other over the same claim. The doctrine is governed by the Full Faith and Credit Act, which commands that federal courts must give a state court judgment the same preclusive effect that the underlying state court would give the judgment. 28 U.S.C. § 1738; *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Federal law and New Mexico law are "consistent on the general standards" of claim preclusion. *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57. These standards include four elements: "(1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Id.* (citing *Kirby v. Guardian Life Ins. Co. of Am.*, 2010–NMSC–014, ¶ 61, 148 N.M. 106, 231 P.3d 87).

## III. ANALYSIS

The presence of res judicata in this case has not just been an elephant in the room since the motion to dismiss stage; it has been an ape in the room, thrashing and screeching in an attempt to break free. Now, the ape is loose. As the defendants have noted in their motion, this case presents a "hornbook example both of the proper purpose and the proper application of res judicata." (Mot. for J. on the Pleadings 12, Doc. 71.)

### i. *Final Judgment in the Earlier Action on the Merits*

The first two elements of res judicata—(1) a final judgment in an earlier action that was (2) decided on the merits—are easily satisfied. Under New Mexico law, an order qualifies as a final judgment if it "fully disposed of the rights of the parties, and otherwise disposed of the matter to the fullest extent possible." *Turner v. First New Mexico Bank*, 2015-NMCA-068, ¶ 7, 352 P.3d 661, 664 (internal citations omitted). The cause of action must also have been "fully and fairly litigated" in accordance with the due process rights of the parties. *Id.* (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) (holding that an order resolving a 12(b)(6) motion to dismiss qualifies as a final judgment on the merits)). In *Turner*, the New Mexico court held that even a trial court order dismissing a complaint without prejudice may qualify as a final judgment on the merits for res judicata purposes. 352 P.3d at 664.

The New Mexico orders in the Bartlett case are unequivocally final judgments on the merits. For the purposes of this case, there are at least three orders that qualify: the two orders dismissing Mark's claims with prejudice, and the final judgment order which concluded the case and entered judgment in favor of the remaining parties. (Answer Ex. C, Doc. 70-3; Answer Ex. D, Doc. 70-4.) These orders were undoubtedly on the merits, as they fully adjudicated and

disposed of claims in the case. The Court assumes that the New Mexico court fairly adjudicated these claims in accordance with due process, considering neither party has raised that issue here.

In rebuttal, Mark argues that these elements are not satisfied because his voluntary dismissal of his state RICO claim does not operate as a final judgment on the merits. (Doc. 78, pp. 8–9.) He cites a 1978 New Mexico appellate case in his favor—*Christman v. Holland*, 1978-NMCA-087, ¶ 7, 92 N.M. 151, 152, 584 P.2d 198, 199—but that case does not help him. In *Christman*, the New Mexico court held that two co-defendants in a foreclosure action who did not bring cross-claims against each other were not later barred by res judicata from brining claims against each other in a separate action relating to the foreclosure. The court explained that since the prior lawsuits were settled prior to any final judgment, the cases never "adjudicate[d] any issue of fact."

*Christman* is easily distinguished from this case, considering the New Mexico trial court adjudicated numerous facts related to the business dispute between the Bartletts. This is plainly apparent from the two orders dismissing the claims against Jim with prejudice and the final judgment order stating 20 pages of findings of fact and conclusions of law. Mark cannot avoid this simply by arguing he voluntarily dismissed one of his claims during those proceedings and brought that claim in another jurisdiction. That is a textbook example of claim-splitting.

  ii. ***Identity of Parties***

The next element of res judicata requires that the parties or their privies in the two suits are the same. *Potter*, 342 P.3d at 57. Three of the four parties in this case were also parties in the New Mexico litigation: plaintiff Mark and defendants Jim and Motamedi. The only remaining party is defendant Mark Keenan—meaning Keenan must be in privity with one of the other parties for res judicata to apply. The New Mexico Supreme Court has adopted the Tenth

Circuit's flexible interpretation of whether two parties are in privity: it requires, "at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 4, 139 N.M. 637, 640, 137 P.3d 577, 580, as corrected (June 29, 2006) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1174 (10th Cir. 1979)).

Here, Keenan is in privity with Jim and Motamedi because they are all co-conspirators. Res judicata disputes predicated on co-conspirators are not common, and this Court cannot find any New Mexico, 10th Circuit, or 7th Circuit cases specifically analyzing whether co-conspirators are in privity with each other for this purpose. Moreover, neither party here has cited to any such case, even though the defendants assert in their motion that co-conspirators satisfy the "identity of parties" element. (Mot. for J. on the Pleadings 10, Doc. 71.) But since New Mexico state courts have consistently held that "federal law and New Mexico law are not divergent on claim preclusion doctrine," it is instructive to look at how other federal courts have resolved this issue. *Deflon*, 137 P.3d at 580.

In 2010, the First Circuit stated that co-conspirators are in privity with each other for res judicata purposes. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010). In *Airframe Systems*, there was a dispute as to whether res judicata barred plaintiff Airframe from bringing a copyright infringement claim against defense contractor Raytheon for the use and/or possession of Airframe's software source code. One of the central issues in the case was whether Raytheon was in privity with L–3 Communications Corporation—a later owner of the source code whom Airframe had already sued. Though the case did not involve a conspiracy, the First Circuit panel (which included The Hon. David H. Souter, sitting by designation after his retirement from the Supreme Court) unanimously stated:

7

> Whether a "close and significant relationship" exists between an original defendant and a defendant only named in a later suit varies with the facts. **For instance, "where some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations,"** or where "a government is sued first (unsuccessfully) and officers in their personal capacities sued afterwards on the same theory," **courts have held the later defendants could raise claim preclusion as a defense.**

*Id.* (emphasis added) (citing *Negrón–Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 8 (1st Cir.2008)). In, *Negrón–Fuentes*, the First Circuit cited to a Third Circuit case: *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972). *Gambocz* dealt with a fact pattern almost identical to the instant case between the Bartletts. In *Gambocz*, the Third Circuit held:

> We previously determined that the essential allegations of the second complaint parallel those of the first. Moreover, what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time. We conclude that the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action.

*Id.*

The United States District Court for the District Columbia has explicitly adopted the *Gambocz* approach. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182 (D.D.C. 2011). In *RSM Prod. Corp.*, the court was faced with an alleged conspiracy involving the nation of Grenada, a petroleum company, and the law firm Freshfields Bruckhaus Deringer U.S. LLP ("Freshfields"). *Id.* at 185–87. The pitfall of the plaintiff's case there was that it was their third time bringing it. The plaintiff attempted to circumvent res judicata by arguing that Freshfields was not named as a defendant in the prior suits. *Id.* at 193. Their complaint, however, alleged that the defendants in those prior suits were "Conspirators Who Are Not

8

Named As Defendants" in the D.C. suit against Freshfields. *Id.* Accordingly, the D.C. court rejected the plaintiff's argument, holding that "[m]embers of a conspiracy are deemed under the law to be in privity with each other." *Id.* at 193. The D.C. court cited both the First Circuit's statement in *Airframe Sys.* and the Third Circuit's holding in *Gambocz* in formulating their decision. *Id.* at 193–94.

There is one recent case which declined to adopt the *Gambocz* theory: *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962 (S.D. Tex. 2014). The facts of that case, however, are readily distinguished from this case. In *New York Pizzeria*, the court was faced with claims that were previously adjudicated, but the court noted that the plaintiff had technically not filed their lawsuit twice. *Id.* at 970. Rather, the pizza company previously adjudicated their claims as counterclaims to a suit in a forum that they did not choose. *Id.* Although this Court has strong doubts as to the merits of the *New York Pizzeria* analysis, it is nevertheless distinguishable from this case considering Mark Bartlett voluntarily brought lawsuits against Jim Bartlett in both New Mexico and Florida, and his New Mexico claims functionally operated as counterclaims when the New Mexico court consolidated the two pending New Mexico cases by Mark and Jim into one.

This Court adopts the Third Circuit's holding in *Gambocz* and the D.C. Court's holding in *RSM Prod. Corp*: co-conspirators can be in privity with each other for res judicata purposes. This holding is consistent with the jurisprudence underlying the Restatement (Second) of Judgments, which is aimed to prevent parties from suing each other again and again and again for the same cause of action. If a party brings a lawsuit against a few co-conspirators and loses, there is no reason why he should be able to re-litigate that dispute against the winners simply by tossing another party into the ring. Should the New England Patriots be entitled to a rematch of their Super Bowl loss against the Philadelphia Eagles purely on the grounds that an injured

Eagles player missed the Super Bowl, and is now healthy enough to play? Such an argument defies reason. Claim preclusion "is a judicial creation ultimately intended to serve the interests of justice." *Armijo v. City of Española*, 2016-NMCA-086, ¶ 13, 382 P.3d 957, 961 (internal citation omitted), and the Court would not be serving justice by allowing Mark Bartlett to re-litigate a dispute that another court of competent jurisdiction already resolved and sanctioned him for.

Mark contests this interpretation. He asserts that the New Mexico court could not have asserted personal jurisdiction over Keenan because Keenan is a resident of Illinois, so it is unfair for the Court to have expected him to sue Keenan there. This is entirely unconvincing, especially considering that Motamedi is also a resident of Illinois according to the complaint (Compl. ¶ 14), yet Mark found a way to join Motamedi in the New Mexico litigation.

Turning to the record, the complaint makes it perfectly clear that Jim and Keenan were co-conspirators in this dispute. First, the complaint starts by bluntly describing Keenan and Jim as "co-conspirators." (Compl. ¶ 16.) It then instructs that Jim "directed" Keenan—an employee of the jointly-owned stores—to assist Motamedi with the management of Jim's new stores. (Compl. ¶ 80.) Next, the complaint states that Jim "directed" Keenan and Motamedi to tell employees of Jim's new store that it was a sister store of the jointly-owned stores. (Compl. ¶ 83.) Jim also allegedly "directed" Keenan to dramatically decrease the number of loans made by the joint stores. (Compl. ¶ 100.) Next, the complaint claims that Jim and Keenan "directed" employees of the jointly-owned stores to refer customers to Jim's new store. (Compl. ¶ 100.) Finally, Jim and Keenan "further directed" employees of the jointly-owned stores to start displaying business cards of Jim's new store. (Compl. ¶ 103.) Since the two are co-conspirators, there is an identity of parties here for res judicata purposes.

  *iii.*  ***Same Cause of Action***

The fourth and final element of res judicata is "the cause of action is the same in both suits." *Potter,* 342 P.3d at 54. New Mexico uses the common "transactional test"—outlined in the Restatement (Second) of Judgments §§ 24–25 (1982)—when evaluating this element. *Id.* Under this test, two causes of action are the same when they arise out of a "common nucleus of operative facts." *Id.* (citing *Anaya v. City of Albuquerque*, 1996–NMCA–092, ¶ 8, 122 N.M. 326, 924 P.2d 735). The Court considers three factors when measuring the common nucleus: (1) how the facts are related in "time, space, or origin"; (2) whether the facts form a convenient trial unit; and (3) whether treating the facts as one unit conforms to the parties' "expectations or business understanding or usage." *Id.*

There is a common nucleus here. Mark argues that the New Mexico court only resolved factual issues related to the diversion of customers and funds, while the instant case deals with a theft of trade secrets claim predicated on the theft of customer lists, office forms, and borrowing and lending protocols. (Doc. 78, pp. 11–12.) But this is a distinction without a difference. In the final judgment order, the New Mexico court explicitly stated that "Mark has not been damaged or suffered any injury because of any action by Dellano [the corporation] and/or Motamedi." (Answer Ex. D, ¶ 65, Doc. 70-4.) The court also found that neither Dellano, LLC or Motamedi caused the jointly-owned stores to "transfer" or "divert" current customers to the new stores. (*Id.* at ¶¶ 55–56.) Most importantly, the court held that "Mark [and the jointly-owned stores] have not been damaged or suffered any injury because of the referral of customers between [the jointly owned] and Dellano stores." (*Id.* at ¶ 63.) If the New Mexico court conclusively held that Mark has not suffered any injury from the referral of customers between the stores, then Mark cannot recast his theory as a "theft" of customer lists because a court has already held that the supposed theft did not result in any injury. Moreover, the New Mexico court stated that "Mark [and the

jointly-owned stores] have not been damaged or suffered any injury due the sharing of business expenses between [the jointly-owned stores] and Dellano stores" (*Id.* at ¶ 64), and surely resources such as office forms fall within the general umbrella of "business expenses". All of the facts between these two cases are clearly related in "time, space, or origin."

To end the fight, the defendants have delivered a final knock-out punch to Mark. Not only are the facts in this case nearly identical to the facts in the New Mexico litigation, but Mark Bartlett brought a state-law RICO claim in that case before he voluntarily dismissed it and split his claims. (Answer Ex. B, ¶¶ 51–62, Doc. 70-2.) His New Mexico RICO claim was predicated on the "illegal transfers of assets" between the stores (*Id.* at ¶ 60)—a claim suspiciously similar to the claim in this case. This demonstrates that the facts form a convenient trial unit, considering they actually *did* form a trial unit at one point. New Mexico courts have repeatedly held that res judicata bars claims that a "plaintiff could and should have brought . . . in the former proceeding." *Potter*, 342 P.3d 54; *see, e.g., Armijo* 382 P.3d 960–61; *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006–NMCA–025, ¶ 10, 128 P.3d 1076, 1082; *Mascarenas v. City of Albuquerque*, 2012–NMCA–031, ¶¶ 27–28, 274 P.3d 781. Mark Bartlett cannot avoid this by splitting his claim between jurisdictions, then crying out that dismissal of one of the branches does not conform to his "expectations." (Doc. 78, p. 13.) "That is called 'claim splitting,' and is barred by the doctrine of res judicata." *Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the defendants' motion for judgment on the pleadings, **DISMISSES** this case **with prejudice**, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

&#8203;
&#8203;
&#8203;
&#8203;
&#8203;

**DATED: MARCH 8, 2018**

                                                **s/ *J. Phil Gilbert***
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**